The second case of today is Fox v. Ritz-Carlton Hotel Company. The appellant is Michael Fox. He's represented by Mr. Francis and we will hear first from Mr. Francis. Yes, good morning and may it please the court. Jim Francis for the appellant, Michael Fox. And I would also like to thank the court for hearing oral argument in these trying times. Consistent with Chief Judge Carnes' instructions at the beginning in terms of outlining what the argument will be, I will just point out that I intend to confine argument to the standing analysis that the district court engaged in as well as briefly the Rule 12 Florida Administrative Code issue. We seek reversal of the district court's January 22, 2019 order dismissing the case for lack of subject matter jurisdiction because it was premised upon two erroneous findings. First, given the specific allegations to the contrary, the court erred when it found that the plaintiff did not have Article 3 standing to assert claims on behalf of class members who dined at different Ritz restaurants on different days than he did. He did and does have standing because A, he was subjected to the same corporate practice by the Ritz, namely the imposition of an automatic service charge without adequate disclosure. B, he suffered the same injury as all class members, which was the payment of the charge. And C, he possesses the identical FIDUPA claims. That trio of similarities is more than sufficient to carry the day for standing, at least at the Rule 12 stage, as this court has consistently held and the Supreme Court has held. The court's error arose from its sole focus on the three restaurants at which Mr. Fox dined and the days he ate there, to the exclusion of the amended complaint's disclosure practice that was consistent and propagated over a four-year period, 10 hotels, and 49 specifically identified restaurants. This was not a case where a plaintiff sought to extrapolate and guess and or speculate as to a defendant's corporate ride practice based upon his own isolated individual experiences. But just as this court in Cariolo did not limit class certification to the singular dealership from which the representative plaintiffs bought their Cadillacs or the day on which they bought their Cadillacs, because the misrepresentation, as here, was propagated statewide, the specific restaurants where Mr. Fox ate and the days he ate there were immaterial or at least non-dispositive, given the other corporate-wide, statewide allegations. The court's error was based upon improper suppositions and speculation at the Rule 12 stage. In so ruling, the district court made a number of inaccurate and unfounded suppositions that were not appropriate for the Rule 12 stage. The assumption that Mr. Fox's claims could only be limited to two days because the menus may have changed not only were not made in a light most favorable to him, they actually contradicted the allegations of the complaint. The district court also guessed or speculated as to whether or not the menus may have changed day to day. Again, not a proper speculation at the Rule 12 stage where the complaint allegations demonstrate the contrary. It may be during discovery that if defendants can prove that the menus varied so greatly, which we don't think discovery will show based upon all of the menus that we've reviewed, it may be true that they can find that the classes may be more limited, there might be subclasses, but that is not an analysis at this point. The question here under Rule 12 was whether or not the allegation supported a corporate-wide practice of inadequate disclosure and whether or not then that led to the amount in controversy under CAFA being met. Now, as a result of the court's error regarding the standing analysis, it then went on and compounded the error to find out that CAFA's jurisdictional limit was not met. However, any conservative math based upon the 49 restaurants over the four years and the 10 different hotels would easily lead to the inference that CAFA's $5 million threshold was matched. And in fact, that fact is supported by the fact that the Ritz never even raised the CAFA jurisdictional argument at the lower court in its motion to dismiss. The second error that the court made was to dismiss Mr. Fox's Florida Administrative Rule 12a claim. Before we get to that question, Mr. Francis, if I can ask just one question about what you were talking about. Did Ritz-Carlton ever argue before the district court that the amount pled was not pled in good faith and factually it was wrong and challenged the facts as to the amount in controversy? No, Your Honor. Or did they just argue as a legal matter, this plaintiff had no standing to raise the claims of the other plaintiffs, therefore, they couldn't reach the $5 million in controversy? Yes, Your Honor. It was the latter. The Ritz argued below that in full candor to the court, it did argue that Mr. Fox's standing should be limited to the restaurants at which he ate. And it did do that. There's no question about that. But what it did not do was engage in any type of argument that the CAFA allegation regarding the jurisdictional limit was made in bad faith, or that the math or the facts relied upon in reaching that allegation were either improper or not supported. Well, they did argue, though, that the damages and therefore the amount in controversy would be affected by how much they would have tipped had not the automatic gratuity been included. So I think you've overstated a little bit. They attacked the amount in controversy in different ways. That was one of them. And by trying to combine the damages to the three restaurants that he ate at was another way to do it. But there was a challenge to the amount in controversy, at least indirectly, correct? I agree. Chief Judge Carnes, I do agree with your recitation. I did not mean to overstate that. That is correct. I think what I was trying to say was that their analysis of Judge Marcus just asked me, were there any allegations that the amount in controversy of the allegation supporting CAFA's jurisdictional limit was made in bad faith? And the answer to that is no. But I do agree with you, Chief Judge Carnes, that they were trying to argue that the limit was not met. But again, based upon what we consider to be an erroneous confining of the standing analysis. Let me ask you this. And while I've got you distracted, I know this is not directly related to standing. But the Florida Statute 509214 requires that you include, does the restaurant include, on the food menu and on the face of the bill, notice that automatic gratuity is included. You've covered in the operative complaint what's on the menu and what's not and the font and all that kind of stuff. But I can't find, maybe I just overlooked it, where you allege that it wasn't included on the face of the bill that there was an automatic gratuity. If in fact it wasn't. And the statute doesn't require that both. It just requires the absence of one further to be a violation the way I read it. But is it? Yeah. Is it undisputed that it was on the menu? I'm sorry, on the bill? I don't know that it's undisputed that it's on the bill, Your Honor. But I think that the statute does require both. Not all, not neither. I'm sorry. I meant the statute doesn't require you to show both, absence in both places. And I'm not suggesting a 12B6 because you didn't allege both. But I have not overlooked explicit or implicit allegation that there wasn't on the bill an indication that there was an automatic gratuity. Am I? No, Your Honor. Okay. You can. Counsel, this is Robert Luck. I know you were about to get to the taxation of the gratuity issue. Can I just fast forward you to the BJ's case and answer for me how that doesn't support exactly what the district court here found that there was a failure to exhaust for not seeking directly from Ruth Carlson a demand for a refund? Yes, Your Honor. I think as we laid out in the brief, the reason for that is because Rule 12A explicitly provides that the consumer must seek the refund from the dealer. And the majority of the cases that RITS relies upon are prior to the 2003. I agree. But noticeably absent from the reply brief is any discussion of the BJ's case, which is clearly after that's done and also after the middle district's case, the Papa John's case. Isn't that a definitive interpretation of state law to which we are bound? Your Honor, I don't think in that case, because I don't think it says that it's an exclusive remedy in this case. And given the fact that the claims that are being asserted here are brought under FDUPA. Didn't it reverse a class action under Producta, exactly the claim that you're making here, because there was a failure to allege an exhaustion of administrative remedies from seeking relief from BJ's? Isn't it exactly what happened in the BJ's case? Yes, Your Honor. But I think in this case, what's different is we're not seeking, we're not saying that there is an administrative remedy that's available. Unlike that in that case, we don't think there's any administrative remedy available here. I think we're confusing the issue. Didn't BJ's hold that there needs to be an exhaustion of a mandatory administrative remedy before you seek a relief from the dealer? Yes, Your Honor. I think that's a proper reading of the case. I think what we're saying is an situation like this, there is no administrative remedy available. But how is that consistent with BJ's, which says that there is? In a situation where somebody collects sales tax inappropriately and seeks Producta relief, you're required to seek relief from the dealer. Explain to me how that's wrong. Because we don't see that there is any administrative remedy. May I ask an additional question? This is Judge Marcus. Mr. Francis, what is the, where do I find a cause of action for what you're claiming? Does 12A1.0115 create a cause of action, that administrative rule? And if the answer is no, I know what it says, but nowhere within its terms does it evince an intent on the part of the Florida legislature to create a cause of action. I can't find any cause of action there, can I? Your Honor, you are correct. There's nothing stated there specifically that would provide, for example, a civil cause of action that provides... Okay, so where then do I look to find a basis for a civil cause of action for the violation of a section of this administrative rule that would be, I guess, seven was the one that deals with gratuities. If not found in one, in this particular rule, where can I find the cause of action? It says you'd have to make a demand, I suppose, but I can't find it there. And the only one, 5.26, the actual statute, but that's dealing with getting a refund directly from the treasury after exhausting an administrative remedy. What I'm asking is, what is there in Florida law that gives you a cause of action, the right to sue the dealer who has allegedly improperly taxed you for gratuities? Where can I find that? The cause of action itself being created by the legislature of Florida. Yes, Your Honor. Thank you. Where you find that is in FDUPA. In the general prescription against unfair trade practices and deceptive practices, FDUPA law is very clear that a violation of any other statute and or consumer protection statute or non-consumer protection statute that creates a per se violation of that underlying statute provides a basis for a FDUPA claim, as in the BJ's case that Judge Locke was just asking me about. That's where the remedy is. That's where the cause of action is. And the FDUPA, the request and the complaint for injunctive and declaratory release and FDUPA recovery is based in part on that violation as well as the automatic gratuity violation. All right. Thank you. Okay. Are you still talking, Mr. Francis? Your Honor, I understood my time was up, but I'm happy to keep talking. No, thank you. All right. Next up, I just, a voice came on to tell me that my line was now unmuted. Am I audible at this point? You are quite audible and clear, and we hope articulate. That is yet left to be seen. Good morning. We're happy to hear from you, Mr. Sirondo. Thank you, Your Honor. My name is Rodolfo Sirondo. I'm with Holland and Knight, and I'm here on behalf of Ritz-Carlton. Rather than start with the general recitation, let me jump into the questions that were asked. Judge Marcus was correct that we did not raise the money, the amount of money issue or threshold in our motion. It was not that it was not seen. We believe that the critical component was the issue of the number of restaurants. Our position was that under Griffin, he only has standing to bring a case on those three restaurants that he visited. I believe that that is a proper reading of Griffin, and not only myself, but in the lower court, in the district court, in Fox v. Lowe's Corporation, Heckman v. SBE, and Dallara v. Sedition Management. The district courts there, like the district court here, found exactly the same thing. Mr. Sirondo, this is Robert Luck. If the allegations, though, are that this is a corporate-wide practice applicable to all 49 restaurants in Ritz-Carlton's Florida hotels, and that that has been the corporate-wide practice for the last four years, how then is there not identity for standing purposes between the injury that the plaintiff alleges that he has and the injury of the class, such that there would be class-wide standing? Well, there's two things, Judge. In the briefs, my opponent does not distinguish allegations that are made straight up under the umbrella of Rule 11 and those that are made upon information and belief. As concerns the 23 restaurants that they allege have no notice and the total 49 restaurants, those allegations are made upon information and belief. Moreover, the specific allegations that are brought under the umbrella of Rule 11, he claims, and I'm just going to follow the chronology as laid out between paragraph 16 and 38 of the amended complaint, he claims that he went to a restaurant called Key Pantry, which he was unaware there would be an automatic gratuity and that there was no notice whatsoever on the menu. He later that day, he went to the restaurant called Cantina Beach, and he indicates that on that one, again, he was apparently still unaware that there was an automatic gratuity, but he says that it was there. Mr. Serrano, what I'm looking at are the At paragraph 14, the allegation is that Ritz-Carlton, the company, violates Florida law at the restaurant and its hotels because of and dot, dot, dot, the gratuity policy. With paragraph 15, Ritz-Carlton violates Florida laws at these restaurants through a variety of deceptive practices, those practices at its hotels, including failing to provide any notice, failing to provide adequate notice, and improperly charging taxes and gratuities. In the class section, in paragraph 40, it states that the questions of facts that predominate are those. In subsection G, it states that Ritz-Carlton's conduct was part of a pattern and practice, that pattern and practice being that it hid automatic gratuities or didn't give proper notice for them. How is that not a company-wide policy? Well, again, Judge, and I was addressing that, if you'll just let me follow through with the argument because it does go to where you're asking. The second restaurant apparently said, per the amended complaint, a suggested 18% gratuity will be added to check for your convenience. That, again, they characterize as an automatic gratuity. As to the restaurant light keepers, which was the next day, it said, again, at the back, as per the operative complaint in smaller font, quote, a suggested 18% gratuity will be added to your check. Please feel free to raise, lower, or remove this gratuity at your discretion. And they characterize that one as a mandatory gratuity. So even as concerns, the three restaurants at the same hotel, the specific allegations, it shows that there is not consistency, that there is no consistency. One didn't have any notice. One said one thing. The other said another. Clearly, even within the one hotel, there was no consistency or hotel-wide practice. And that is my answer to your question, Your Honor. But it seems to me the allegations, particularly in 14 and 15, are that there are a variety of ways they do it. And that in all of its restaurants, and in restaurants throughout pattern and practice, the way that Ritz-Carlton does it are the variety of ways alleged there, all of which meet the same pattern or practice of violating the law as regard to posting of gratuities and automatic gratuities. Mm-hmm. Again, Judge, that is my answer. I understand. Let me ask you a question this way, Mr. Serrano. This is Judge Marcus. We have held more than once that all that the law requires for standing purposes on the front has standing. Put differently, that a suit, in constitutional terms, that a suit may be a class action, adds nothing to the question of standing. The named plaintiff must allege and show that it has been personally injured, that the injury is redressable by a court of law, not at this stage in the game, that the other putative members of the class, which has not yet been certified, have been injured. Isn't that right? If I understood your question correctly, yes. The district court, however, dismisses this case for lack of standing, and he seems to say the he went to three restaurants on three specific dates, and he can't otherwise establish or stand in the shoes for class action purposes for the other unnamed plaintiffs, and therefore, $5 million cannot be established as being in dispute. The plaintiff has not sufficiently alleged a basis for his individual claims that defendants' practices, I'm reading from the opinion of the district court, were unfair or deceptive in violation of state law to support a class action that meets the jurisdictional threshold of $5 million. But it seems to me that confuses what he has to do on the front end. All he has to do for standing is establish that he has, in fact, sustained an injury that is redressable by a court. He doesn't have to establish at this point, does he, that the other putative members of the class, in fact, have been injured? Judge, I'm sorry, I lost track of your question. Maybe I didn't put it well. Let me try again. Does it matter at this point, for standing purposes, whether the other putative members of the class have standing, or is the only question we're supposed to ask for standing, justiciability, whether this particular named plaintiff representing the class was injured, in fact? The latter. And I believe that that is what the Griffin case says, and that is what, excuse me, the district court cases that I cited earlier say. So then what's the theory upon which this case was dismissed? Well, that he has standing only to make a claim for the injuries that he suffered at these three restaurants, and there is no plausible interpretation of what is pled that would reach the $5 million jurisdictional threshold. We did math, which, you know, I'm a lawyer, so my math is not reliable, but they would have had to have sold, those three restaurants had sales of $27.8 million or somewhere around there. That's assuming that they were to be awarded the entire 18%, which, of course, we agree with the trial court that they're not entitled to the entire 18%. Had he pled that he is one of those Americans who never tips, well then, under the definition of actual damages in FIDAPA, he may have raised it to the level of 18%, but he did not say that. And, you know, it is, the trial judge looked at this thing in the light of his common sense and judicial experience under Iqbal, and there is, in fact, commonly 15%, most people give it. He didn't allege that he's not a tipper at all, but even if he is right on the 18%, if the trial court is correct, and I believe the trial court is under Griffin, that we're only talking about the three restaurants, there is no plausible interpretation that gets him to the $5 million. Because the hundreds of thousands of diners, which might get him to the $5 million, is not an allegation made or directed at the three restaurants. And he also cannot allege facts as to the other restaurants because he never saw those. Going back to the question that I think Judge Karnes, Chief Judge Karnes... Before you do, before you get off that, let me just ask the question in a slightly different way. Suppose my class action was the following. I bought an automobile from a company, new car, and I claimed that there was a defect that caused the car to go forward even when I didn't have my foot on the gas pedal. And in fact, it went forward and I was injured, and I bring a negligence and strict liability case against the manufacturer of the automobile. And I purport to represent 50,000 other purchases of that car during a particular time frame in the state of Florida. And I simply assert in good faith that the amount in dispute was more than $5 million, given the number of people who bought that car in the state of Florida. Would I have standing to sue? I believe you. I think that that's the Cariulo case, Your Honor. And I believe it is. The answer I think is yes. And I think that the facts are completely different and they're distinguishable from this. This is just not that case. But this particular... If I bought my car, I know other people bought this automobile in the state of Florida. There was many, many dealerships throughout the state during this time frame. And I allege that each and every car they manufactured had the same defect in the construction of the engine and the wheel and the pedal, et cetera. What's the difference between that and what he has alleged in this case involving 10 Ritz-Carlton's in the state of Florida, which had so many restaurants, bars, lounges, and the like? How could I represent these other dealers, these other plaintiffs? At this point, that's a different question, isn't it? Rather than whether they're standing to sue. I've been injured and I claim that I can meet the elements of Rule 23A and 23B3. That's for another day. The district court throws me out of court because he says the amount in controversy was 50 grand. That's all you could possibly have by way of injuries sustained. You can't get anywhere near 5 million because you don't know anything about these other people. Could I bring a class action? I don't know. Would I have standing? For sure. The problem I'm raised with you is I'm not sure I understand how the district court could dismiss this case for lack of standing. It seems to me it conflates the question of standing with whether or not you could otherwise establish the elements for Rule 23. Am I missing something here? Judge, I think that the example that you've given me about the automobile is, again, more like the Carrillo case. That is more of an overall common business practice across the board. That is a different situation than what you're talking here, where you're talking about individual restaurants and what they might or might not do. It all revolves around whether or not he is limited to the three restaurants that he visited and that he knows, or at least alleges, that they were misleading, that the menus were misleading and in violation of the statute. Going back, again, to the paragraphs 14 and 15 that Chief Judge Carnes directed me to, those are general allegations, conclusory allegations that are not specific and, therefore, are inapposite to the analog. I don't see how they're not specific when they're read in light of the other allegations specifically, excuse me, and the ones in which he's made the allegations about the three restaurants he did visit. You have to read them together and in context. He's made allegations about what happened at the three, and then he makes the allegation about there's a pattern in practice. Time has expired. You can answer the question. All right. You're pointing out that it is not just the 14 and 15, but rather that it is in a certain context. Again, my answer is the same as I've offered before. There is no consistency, no common practice, even at the three restaurants where he can speak definitively to. Consequently, the trial judge correctly dismissed it. Okay. If there are no other questions, thank you, Mr. Sando. Mr. Francis, you have three minutes. Thank you, Your Honor. Just quickly, I'd like to just address a couple of things, confining my comments to what was just discussed. First, with regard, Ritz cites Griffin as well as the district court. I think Griffin actually supports our position here because the issue in Griffin was that the plaintiff in that case did not have the testing claim that he was seeking to assert on behalf of other class members, and thus he did not have the injury. This court and the Supreme Court and most circuits have decided that the plaintiff must have the same injury, be subjected to the same practice. Those are the things that create the nexus for standing. As Judge Marcus pointed out earlier, at this stage, he clearly has alleged standing. He alleged standing because he had the same injury and is subjected to the same practice. I would also agree with Judge Marcus that I think what the district court did was conflate Rule 23 with Article 3 standing doctrine, which is an injury to get in federal court doctrine, versus Rule 23, which is something that should be looked at down the road in light of evidence and in light of a full record. The reality is, this case is just like Cariolo. Cariolo was a case where this court upheld the certification of a class of Cadillac CTS purchasers because there was a misrepresentation on the window through a sticker. The evidence was that that misrepresentation was common across the state for everybody who bought that car, regardless of the dealer. That's the same as this situation under these allegations, that all of the rich restaurants at issue here committed the same inadequate disclosure. Therefore, it doesn't matter whether Mr. Fox went to one restaurant or he went to all of them. That's the allegation that's before the court right now. As I said before, to the extent that they can prove that one or more of the restaurants didn't do it at class certification, those restaurants would be carved out or the claim would be limited. But you can't do that at this stage. These allegations are more than sufficient to plead Catholic jurisdiction, which we did. The reality is, if this decision is upheld, it'll effectively preempt any class actions from going forward that are based upon a corporate-wide misrepresentation. Because unless the consumer can prove that he went to every Best Buy that misrepresented the TV or went to every store, there is no way that at the pleading stage, that the consumer would ever be able to prove the type of standing that the district court is at this level. So we think that for the reason Judge Marcus outlined, this court needs to separate and make it very clear that Article III standing is one issue which does only generally require the plaintiff to have standing to be in federal court. And it conflated that analysis with Rule 23, which the plaintiff must prove at a later date that he can represent those other members. And that's for a different stage. But at this point, upon these allegations, I believe you're repeating yourself and Ms. Teza has called time. Thank you, Your Honor. And again, thank you for granting oral argument, Jim Francis, for the appellant, Michael Fox. Okay, we'll take those two cases under submission, stand in recess, and adjourn for the day. Thank you, Your Honor.